IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ENERGY AUTOMATION SYSTEMS, )
INC., JOSEPH MERLO and )
PAUL BLEIWEIS, ) NO. 3:08-00285
) JUDGE HAYNES
    Plaintiffs, )
)
v. )
)
PAUL SAXTON and )
ENERCON, INC., d/b/a ENERCON )
INTERNATIONAL, INC., d/b/a )
ENERCON TECHNOLOGIES, INC., )
)
    Defendants. )

## MEMORANDUM

Plaintiffs, Energy Automation Systems, Inc., ("EASI"), Joseph Merlo and Paul Bleiweis, Tennessee citizens, filed this action under the Copyright Act, 17 U.S.C. § 101 et seq. and the Lanham Act, 15 U.S.C. § 1125 against the Defendants: Paul Saxton and Enercon, Inc., doing business as Enercon International Inc. and Enercon Technologies, Inc. ("Enercon"), citizens of South Dakota. Plaintiffs' claims arise from their dealership agreement with the Defendants that the Defendants' cancelled and thereafter, allegedly copied and used Plaintiffs' business model and dealership agreement to promote the Defendants' business.

Before the Court is the Defendants Saxton's and Enercon's motion to dismiss for lack of personal jurisdiction. (Docket Entry No. 5). In essence, the Defendants cite their lack of any contacts with Tennessee that are sufficient to justify this Court's exercise of personal jurisdiction over them. Defendants contend that the Defendants' contacts with Tennessee cited by the Plaintiff are "random," "fortuitous," or "attenuated" contacts that are insufficient to justify the

Court's exercise of personal jurisdiction over the Defendants. Defendants contend that the Plaintiffs' claims against Enercon and Saxton also do not "arise from" their contacts with Tennessee. Plaintiffs respond with proof that the Defendants elicited and promoted their business in Tennessee through the sales of their products and services that included Plaintiffs' copyrighted material. Defendants respond that Plaintiffs fail to proffer direct evidence of any actionable conduct by the Defendant in Tennessee nor any injury sustained by the Plaintiffs in Tennessee.

## A. Analysis of the Motion

In April 2001, Saxton applied for an EASI dealership and attended his first EASI dealer training at EASI's Hendersonville, Tennessee office and attended his second training there in October 2001. (Docket Entry No.12-1, Saxton Deposition at pp. 18, 20, 26). EASI is in the energy conservation industry. After the first week training on April 19, 2001, Saxton, on Enercon's behalf signed a dealership agreement with EASI for Enercon at EASI's Hendersonville office. Id. at Exhibit 3 at pp. 19-23. Under this Agreement, Enercon agreed that any disputes arising under the 2001 Agreement would be governed by Tennessee law and any action to enforce contract rights would be filed in a Tennessee court. Id. at pp. 19, 21. EASI's revenue from the sale of EASI dealerships are forwarded to EASI's office in Hendersonville. (Docket Entry No. 15, Bleiweis Declaration at ¶ 3). Most of EASI's assets are in Tennessee. Id.

In 2001 and 2002, Saxton ordered hundreds of EASI products. Id. at p. 39 and Exhibits 4 and 6. From 2001 to 2003, Defendant Saxton, on Enercon's behalf, communicated at different intervals, sometimes a few contacts each month and sometimes twice a week with Joe Merlo, Paul Bleiweis, Bill Gilberts, John Medina and Joelle Frasca at EASI's Hendersonville office. Id.

2

at pp. 22, 26. Saxton later complained about EASI to the Middle Tennessee Better Business Bureau. The parties' 2001 agreement was subject to cancellation in May, 2003, id. at p. 24, but on May 2, 2003, Defendants entered into a second contract with EASI and terminated the parties' 2001 Agreement. The parties again agreed that Tennessee law would govern any contract disputes under their agreement. Id. at p. 74. When the parties negotiated and executed their 2003 agreement, the provision that the Tennessee would be the forum for any legal disputes was removed. In July 2003, months after executing the May,2003 agreement, the Defendants terminated the 2003 agreement and attempted to sell EASI's equipment to EASI. (Docket Entry No. 15, Bleiweis Declaration at ¶ p. 2).

After terminating the 2003 Agreement, Enercon allegedly copied EASI's business model and sold an Enercon "dealership" to a Tennessee company, OL II Energy Automation, LLC. (Docket Entry No. 12-1, Saxton Deposition at pp. 46 and 47, Exhibit 7 thereto). Saxton conceded that Enercon's "Independent Affiliate Agreement" is virtually identical to EASI's "Authorized Reseller Agreement." Id. at pp. 56, 57, 59. The Defendants copied almost verbatim EASI's dealership agreement for Enercon's "Independent Affiliate Agreement." Id. at p. 13 and Exhibit 3, EASI's "Authorized Reseller Agreement" and Exhibit 7, Enercon's "Independent Affiliate Agreement". From 2003 to 2007, Defendants sold over $200,000 in products to OL II's for installation in Memphis, Tennessee. Id. at p. 125 and Exhibit 12 thereto. During this period, Defendants had between 100 and 200 communications with Sandy Lichterman, a Tennessee resident about OL II. Id. at pp. 109, 110, Exhibit C. Since 2004, Defendants purchased over $30,000 in products and services from Energy Design Services, LLC ("EDS"), a Tennessee company in Fayetteville, Tennessee. Id. at pp. 115, 131, Exhibit 15 and 16 to Saxton Deposition

3

and Exhibit B, Response to Interrogatory No. 4).

Since 2005, Defendants also communicated with Chris Stevens, an EDS's principal and a Tennessee resident as well as with former EASI employees for engineering support services for Enercon,. These discussions concerned EDS's products and services that Enercon purchased. Id. at pp. 134-136, Exhibit 17 thereto, Defendants' Supplemental Response to Plaintiffs' Discovery, attached as Exhibit D at 3. From 2005 through 2008, Saxton traveled through Tennessee to visit three other Tennessee residents who contacted Saxton for business. Id. at p. 139, Exhibit C, and Exhibit D at pp. 3-5.

In July 2003 Saxton posted material about EASI on an Internet bulletin board. Id. at p. 137 and Docket Entry No. 15, Bieiweis Declaration at ¶ 3. Defendants' two internet websites permit anyone, including a Tennessee citizen to submit a questionnaire to Enercon. Id. at pp. 101 and 102. Enercon's websites, http://www.enerconbiz.com/questionaire.php and http://www.enercontech.com were last visited September 16, 2008.[1] Defendants website describes EASI's products and services. Id. at pp. 120-122. Plaintiffs' proof is that one Tennessee citizen submitted a website questionnaire to the Defendants. (Docket Entry No. 17, at Exhibit D there to at p. 5). Defendants also purchased the names of Plaintiffs as Google Adwords[2] for internet searches that would lead the searcher to Enercon's website. Id. at pp. 76-85 and Exhibit 9 thereto.

---

[1] A court may take judicial notice of the contents of an Internet website. City of Monroe Emples. Ret. Sys. v. Bridgestone Corp., 387 F.3d 468, 472, n.1 (6th Cir. 2004)

[2] "Adwords" are terms that a party may purchase from Google. If an Internet user includes an Adword in a search on the Google website, the website, the website operated by the Adword purchaser will appear at the top of the list of websites found during the search.

4

## B. Conclusions of Law

Upon a motion to dismiss for lack of personal jurisdiction, the Court may rely on the submission of affidavits or conduct on evidentiary hearing under Rule 12(d) of the Federal Rules of Civil Procedure. Welsh v. Gibbs, 631 F.2d 436, 438 (6th Cir.1980); 2A Moore's Federal Practice, § 12.07 (2d Ed. 1985). If an evidentiary hearing is not held, then the Court must view the pleadings and affidavits in the light most favorable to the plaintiff. Welsh, 631 F.2d at 439. Here, neither party requested a hearing, but the parties submitted affidavits. In any event, Plaintiffs need only make a prima facie showing that jurisdiction exists and all of the parties' allegations of jurisdictional facts are presumed true and all factual disputes are decided in Plaintiffs' favor. Nelson v. Park Industries, Inc., 717 F.2d 1120, 1123 (7th Cir. 1993); Welsh, 631 F.2d at 436.

There are two types of personal jurisdiction: "specific jurisdiction" and "general jurisdiction". As the Supreme Court explained: "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising "general jurisdiction" over the defendant. Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414 nns. 8 and 9 (1984). In a word, general jurisdiction involves contacts of "continuous or systematic nature". Third National Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). When a State exercises personal jurisdiction over a defendant's contacts with the forum, the State is exercising "specific jurisdiction" over the defendant. Id.

In assessing whether this Court can acquire personal jurisdiction over the Defendants, citizens of South Dakota, the Court is guided by the Supreme Court's decisions defining the

5

requirements and limits of the Due Process Clause of the Fourteenth Amendment. In <u>Asahi Metal Ind. v. Superior Court of California, Solano County</u>, 480 U.S. 102 (1987), the Supreme Court concluded that a Japanese corporation's placement of a product in stream of commerce, without more, was insufficient to satisfy the minimum contact test under the Due Process Clause for the exercise of personal jurisdiction over the Japanese corporation. The Supreme Court reiterated that the touchstone determination under the Due Process Clause for the District Court's exercise of personal jurisdiction over a foreign corporation is whether the foreign corporation purposefully established minimum contacts in the forum state.

In <u>Asahi</u>, the Supreme Court reaffirmed its earlier holding in <u>Hanson v. Denckla</u>, 357 U.S. 102 (1958), involving American corporations that minimum contacts must be established by evidence of some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of the forum's state laws. <u>Asahi Metal</u>, 480 U. S. at 109 (quoting <u>Burger King</u>, 471 U.S. at 475). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random', 'fortuitous' or 'attenuated' contacts. <u>Keeton v. Hustler Magazine Inc.</u>, 464 U.S. 770, 774 (1984), or of the 'unilateral activity of another party or a third person.'" <u>Burger King Corp v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (quoting <u>Helicopteros Nacionales</u>, 466 U.S. at 417).

In <u>Burger King</u>, the Supreme Court outlined the factors for determining whether the District Court possesses personal jurisdiction.

> <u>The due process clause</u> protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties or relations". By <u>requiring that individual have "fair warning" that</u>

6

a particular activity may subject him to the jurisdiction of a foreign sovereign, the due process clause "gives a degree of predictability to the legal system that allows potential Defendants to structure their primary conduct with some minimum assurance as to where the conduct will or will not render them liable to suit.

Where a forum seeks to asserts specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has "purposefully directed" his activities as resident of the forum, and the litigation results from the alleged injuries that "arise out of or relate to" those activities . . . and with respect to interstate contractual obligations, we have emphasized the parties who ties who "reach out beyond one state and crest and obligations with citizens of another state" are subject to regulations and sanctions in the other of their activities." (Emphasis added).

471 U.S. at 471-73.

The Court also noted that the

"[j]urisdiction is proper however, where the contacts proximately result from actions by the defendant that create a 'substantial connection' with the forum. Thus, where the defendant 'literally' has engaged in a significant activities within a state, or has created 'continuing obligations' between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business the, and because his activities are shielded by 'the benefits and protections' of the forum laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."

Id. at 475-78. To be sure, "some single or occasional acts related to the forum" can support a finding of personal jurisdiction, but not if the "nature and quality and the circumstances of their commission create only an 'attenuated' affiliation with the forum." 471 U.S. at 475, n.2.

In Southern Machine Co. v. Mohasco, 401 F.2d 374 (6th Cir.1968) the Sixth Circuit summarized the governing principles in a three-part test for determining when, personal jurisdiction may be exercised consistent with due process:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial

7

enough connection with the forum state to make the exercise or jurisdiction over the defendant reasonable.

401 F.2d at 381.

Mohasco remains an accurate statement of existing law. See Mott v. Shelling & Co., 966 F.2d 1453, 1992 WL 116014 at *3 (6th Cir. 1992). As the Sixth Circuit later stated "[t]he sine qua non of personal jurisdiction is the purposeful availment factor." Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1273 (6th Cir.1998). To be sure, "merely entering into a contract ... would not, without more, establish sufficient minimum contacts." Compuserv, Inc. v. Patterson, 89 F.3d 125, 1265 (6th Cir. 1996).

Defendants purchased an EASI dealership in 2001 and attended EASI training in Hendersonville, Tennessee in 2001. (Saxton Deposition at 18:31-20:21; Doc. No. 1, Exhibit B). Defendants purchased approximately $30,000 of products from EASI in 2001 and 2002. (Docket Entry No. \_\_\_\_\_ Saxton deposition at pp. 26- 41 and Exhibits 4 and 5thereto). Defendants continued to engage in business with EASI and entered into a second contract with EASI in 2003. Id. at Exhibit 8 thereto. After terminating their agreement with Plaintiffs, Defendants copied EASI's dealership agreement and sold an Enercon dealership to a Memphis firm in 2003 and sold over $200,000 of Enercon products to that dealer, all of which were installed in Memphis. Id. at pp. 46-47 and 125 and Exhibits 7 and 8 thereto. Defendants have made purchases from a Tennessee company to supply its products since 2002. Id. at p. 115, 131 and Exhibits 15 and 16 thereto. Saxton complained to the Middle Tennessee Better Business Bureau about EASI. Id. at p. 142. Defendants have advertised on Google, the world's largest search engine, which reaches Tennessee, using the Plaintiffs' names. The Defendants entered into an

8

affiliate agreement with QL 11, a Tennessee company, and purchased products and services from three Tennessee companies. In this Court's view, these continuous commercial activities are sufficient to establish general jurisdiction over the Defendants.

As to specific jurisdiction, Defendants entered into two contracts with EASI, one of which is directly at issue in this action. Under Tenn. Code Ann.§ 20-2-214(a)(5), the exercise of personal jurisdiction is appropriate over a foreign entity "[e]ntering into a contract for services to be rendered or for materials to be furnished in this state". Tennessee. In addition, the parties resolved the disputes under the 2001 agreement by executing the parties' 2003 Agreement. "[A] settlement agreement may provide a basis for specific jurisdiction over a non-resident defendant." Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 551 (6th Cir. 2007).

In this circuit, "[t]he operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state under the first Mohasco factor 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" Bird v. Parsons, 289 F.3d 865, 874 (6th Cir.2002) (citing Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir.2002)). See also, Air Prods. & Controls, 503 F.3d at 551-52; Compuserve, 89 F.3d at 1264 (email and regular mail); Rae v. Meier, No. 02-2329, 2003 U.S.Dist. LEXIS 2365, at *10 (W.D. Tenn. Feb. 19,2003) (telephone and email).

"The operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state . . . if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." Bird, 289 F. 3d at 874 (quoting Neogen, 282 F.3d at 890. Yet, passive websites that simply provide information are insufficient to justify personal jurisdiction over a nonresident, but interactive websites permitting a resident

9

of the forum to exchange information with the defendant can demonstrate purposeful availment. First Tenn. Nat'l Corv. v. Horizon Nat'l Bank, 225 F. Supp. 2d 816, 820 (W.D. Tenn. 2002).

Enercon's "dealership agreement" with the Plaintiffs gives rise to Plaintiffs' claims because the Defendants utilized Plaintiffs' dealership agreement that is virtually identical to the Defendants' agreement with the Memphis firm. Plaintiffs contend that the Defendants copied EASI's contract and passed off this agreement as an Enercon contract. Both agreements expressly stated that they would be governed by Tennessee law. The Defendants elected to come to Tennessee to commence their relationship with the Plaintiffs and the Memphis firm. The harm to Plaintiffs arises out of the Defendants' copying of their business agreement and using that agreement to do business in Tennessee. The Defendants registered words associated with Plaintiffs on Google so that an Internet user would find Enercon's website instead of EASI's website. The Court concludes that this evidence is more than sufficient to make a prima facie showing that the Defendants' purposely availed themselves of doing business in Tennessee. Given that the Defendants purportedly copied Plaintiffs' business forms, the Defendants should have reasonably been expected to be haled into a Tennessee court for such conduct.

Defendants rely upon Calphalon Corp. v. Rowlette, 228 F.3d 718 (6th Cir. 2000) for their contentions that Plaintiffs' showing is insufficient for this Court's exercise of personal jurisdiction over them. There, the plaintiff an Ohio corporation, manufactured products that the Defendant sold in several Midwestern States. Id. at 720. The defendants were a Minnesota-based corporation and Minnesota resident who did not own any real or personal property in Ohio. Id. From 1980 to January 31, 1998, the corporate defendant "was the exclusive manufacturer's representative for Calphalon in the states of Minnesota, Iowa, North Dakota,

10

South Dakota, and Nebraska." Id. From 1980 to 1996, those parties had a "letter agreement" and executed two identical "one-year manufacturer's representative agreement[s]." Id. Each agreement stated, "[T]his Agreement shall be interpreted under the laws of the State of Ohio." Id. Under those agreements, the Defendant there were obligated "to promote the sale of Calphalon's products, to keep Calphalon informed of market conditions, and to develop sales plans for customers." Id. During the eighteen years in which Defendants served as Calphalon's manufacturer's representative, the Defendants "corresponded with Calphalon in Ohio via telephone, fax, and mail . . . ." id., and Defendant also traveled to Ohio on behalf of the corporate Defendant on multiple occasions including "a mandatory sales meeting and . . . to accompany a client on a tour of the Calphalon facilities." Id. at 720. The action arose from the Plaintiff's decision to end its relationship with the Defendants who alleged that Calphalon had breached their representative agreements. Id. at 720-21. The Defendants there challenged the district court's lack of jurisdiction. Plaintiff contended that because the Defendants executed the manufacturer's agreement, the Defendant had "purposefully availed itself of the benefits of the laws of Ohio" by its association with Calphone, the Ohio corporation. Id. at 722.

In Calphalon, the Sixth Circuit held that the Ohio district court lacked personal jurisdiction over the defendants concluding that the defendants had not purposefully availed themselves of the benefits of the laws of Ohio and that plaintiff's claims were not substantially connected to the defendants' contacts in Ohio. As to the "purposeful availment" prong of the Southern Machine test, the Sixth Circuit concluded that "the district court correctly recognized that the mere existence of a contract between Defendants and an Ohio citizen for seventeen months was insufficient to confer personal jurisdiction over Defendants." Id. at 722. The Sixth

11

Circuit stated that the focus should be on "the quality rather than the quantity" of contracts to determine whether personal jurisdiction existed. Id. The Sixth Circuit classified the Plaintiff's cited contacts as "purely 'fortuitous' and 'attenuated'":

> Defendants' performance of the agreement was not focused on exploiting any market for cookware in the state of Ohio. Moreover, [R&A]'s phone, mail, and fax contact with Calphalon in Ohio and [Mr.] Rowlette's physical visits there occurred solely because Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business and create "continuous and substantial" consequences there. Arguably, [R&A] would have sewed as Calphalon's representative in the designated states, regardless of Calphalon's base of operation. Thus, Rowlette's contacts were precisely the type of "random," "fortuitous," and "attenuated" contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction.

Id. at 723. The Sixth Circuit also held that the choice of law provision in the parties' agreement did not confer personal jurisdiction. Id.

In its decision, the Sixth Circuit stated that the Defendants did not do any act "[c]ausing a consequence in the forum state " nor did the litigation arise "from the Defendants' activities in the forum state." Id. at 721. The Sixth Circuit also noted that the issue was whether the cited breach of the contract arose from "[t]he very soil from which the action for breach grew." Id. at 724 (quoting InFlight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 228 (6th Cir. 1972). In Calphalon, "the facts at issue did not occur in the forum state nor were the consequences of the breach substantially connected to the forum state." Id.

The Defendants insist that Plaintiffs have failed to cite proof that Enercon was exploiting or participating in the Tennessee market for energy products when the Defendants executed the Authorized Reseller Agreement and that signing such an agreement does not establish continuous and substantial contact in Tennessee.

12

Here, the Defendants twice executed the Plaintiffs' agreement in Tennessee. The Plaintiffs trained the Defendant Saxon, the defendant Enercon's representative in the operations of the Plaintiffs' business in Tennessee. The Defendants are conducting their business with third parties in Tennessee based upon the same contractual terms as in Defendants' contract with the Plaintiffs. Defendants copied Plaintiffs' business agreement and engaged in a similar line of business in Tennessee. The acts in Tennessee are alleged to have caused Plaintiffs' injuries in Tennessee, i.e., loss of business opportunity. The Court concludes that the facts here render Calaphon factually inapposite.

For these reasons, the Court concludes that the Defendants have sufficient contacts with Tennessee to justify this Court's exercise of general and specific personal jurisdiction over the Defendants.

An appropriate Order is filed herewith.

Entered this the 24th day of March, 2009

William J. Haynes, Jr.
United States District Judge

13